## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZOHAR III, CORP., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| BLANK ROME LLP, FFP (CAYMAN) LIMITED, MAPLES AND CALDER, MAPLESFS LIMITED, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, GARY NEEMS, and QUINN EMANUEL URQUHART & SULLIVAN LLP, | Adv. Pro. No. 19-50273 (KBO) |
| Plaintiffs, | |
| v. | |
| ZOHAR CDO 2003-1, CORP. and ZOHAR CDO 2003-1, LIMITED | **Ref. Adv. Docket No. 21** |
| Defendants. | |

## THE ZOHAR I FUND'S OBJECTION TO PATRIARCH'S MOTION TO INTERVENE

Zohar CDO 2003-1, Corp. and Zohar CDO 2003-1, Limited (together, the "Zohar I Fund"), the defendants in the above-captioned adversary proceeding (this "Adversary Proceeding"), hereby object (this "Objection") to *Patriarch's Motion to Intervene* [Adv. Docket No. 21] (the "Motion to Intervene") filed on November 4, 2019. In support of this Objection, the Zohar I Fund respectfully represents as follows:

---

[1] The "Debtors" in the above-captioned Chapter 11 cases and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

## PRELIMINARY STATEMENT[2]

1.    Following good-faith, arms'-length negotiations, the Parties reached a comprehensive settlement of the issues raised in the Complaint providing for a full resolution and dismissal of this Adversary Proceeding.  As set forth in the 9019 Motion, the Settlement is a sound exercise of the Zohar I Fund's business judgment, which takes into account the substantial risks, significant costs (in terms of both time and resources), and complexity inherent in litigation and resolves the Parties' issues in a fair and cost-effective manner.  The Settlement falls well above the lowest range of reasonableness and, importantly, is supported by MBIA, which, as the senior secured creditor of the Zohar I Fund, would be entitled to receive any amounts that the Zohar I Fund retained or recovered from the Zohar I Issuer Holdback through continued litigation or otherwise under the Final Cash Collateral Order.

2.    Having failed to timely seek intervention, Patriarch now appears at the 11th hour seeking to unwind the Parties' good-faith compromise and obtain Court approval to do that which Patriarch appears most wont to do – litigate.   Patriarch's efforts are clearly not economically motivated, as they threaten to saddle the Zohar I Fund's estate with further professional costs that could possibly exceed the amount that could be recovered from the Zohar I Issuer Holdback.  Further, litigation of this roughly $2,000,000 dispute will be an unnecessary distraction from the Debtors' and Patriarch's essential task at hand in these Chapter 11 cases – the Monetization Process.

3.    As set forth more fully below, Patriarch cannot meet its burden to prove that intervention is appropriate as it has failed to timely seek intervention and has no specific economic or other interest in the Zohar I Issuer Holdback that needs protection.  At this stage,

---

[2]  Capitalized terms used in this Preliminary Statement shall have the meanings given to such terms below.

the proper avenue for Patriarch to voice disagreement with the Zohar I Fund's business judgment in pursing the Settlement is through an objection to the 9019 Motion, which Patriarch has indeed already filed.[3]

4.     For these reasons, discussed more fully below, the Court should deny the Motion to Intervene.  Alternatively, the Court should defer ruling on the Motion to Intervene pending its consideration of the 9019 Motion and Patriarch's objection thereto, as approval of the 9019 Motion would moot the Motion to Intervene.

## BACKGROUND

5.     On July 12, 2019, Blank Rome LLP ("Blank Rome"), FFP (Cayman) Limited, Maples and Calder, MaplesFS Limited (collectively, with FFP (Cayman) and Maples and Calder, the "Cayman Service Providers"), Morris, Nichols, Arsht & Tunnel LLP, Gary Neems, Quinn Emanuel Urquhart & Sullivan LLP, and Cohen & Gresser LLP (collectively, the "Plaintiffs," and collectively with the Zohar I Fund, the "Parties") initiated this Adversary Proceeding by filing a complaint (the "Complaint") against the Zohar I Fund seeking declaratory judgment that $1,818,115.54 of the $2,420,000 "Zohar I Holdback Amount" (as defined in the Complaint) is not property of the Zohar I Fund's estate on the following alleged bases:

- The Indenture Trustee is holding the Zohar I Holdback Amount in escrow under New York law for the benefit of the Plaintiffs and that it therefore does not constitute property of Zohar I Fund's estate (Count I).

- The Indenture Trustee is holding the Zohar I Holdback Amount in express trust under New York law for the benefit of the Plaintiffs and that it therefore does not constitute property of Zohar I Fund's estate (Count II).

- The Indenture Trustee is holding the Zohar I Holdback Amount in constructive trust under New York law for the benefit of the Plaintiffs and that it therefore does not constitute property of Zohar I Fund's estate (Count III).

---

[3] See Adv. Docket No. 26.

6.      On August 12, 2019, the Zohar I Fund answered the Complaint.

7.      A detailed factual background regarding the disputes underlying this Adversary Proceeding (including the pre-petition disputes involving the Plaintiffs, MBIA, and Patriarch) and the events leading up to the filing of the Complaint is set forth in the *Debtors' Motion, Pursuant To Section 105(a) of The Bankruptcy Code and Bankruptcy Rule 9019, for an Order Approving and Authorizing the Stipulation of Settlement By and Among the Debtors, Blank Rome LLP, FFP (Cayman) Limited, Maples and Calder, MaplesFS Limited, Morris, Nichols, Arsht & Tunnel LLP, Gary Neems, Quinn Emmanuel Urquhart & Sullivan LLP, and Cohen & Gresser LLP* [Adv. Docket No. 19] (the "9019 Motion") and incorporated herein by reference.[4]

8.      As set forth more fully in the 9019 Motion, the Zohar I Fund and the Plaintiffs engaged in good-faith negotiations and the Zohar I Fund has determined that (i) the time, expense and other resources already devoted to the Zohar I Issuer Holdback has been substantial; (ii) the costs of litigating the matter could, coupled with resources previously incurred, very well exceed the amount of the Zohar I Issuer Holdback that could be recovered by the Zohar I Fund; (iii) were the Zohar I Fund to recover the full amount of the Zohar I Issuer Holdback, such amounts would merely be distributed to MBIA in accordance with the Final Cash Collateral Order, and MBIA supports the Settlement (defined below); and (iv) based on, among other things, the fact that the Zohar I Issuer Holdback may constitute funds held in "trust" under the Zohar I Indenture and the Indenture Trustee provided notice such funds would be held in "escrow," there is downside risk to the Zohar I Fund regarding the outcome of this Adversary Proceeding.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the 9019 Motion.

9.      Accordingly, on October 30, 2019, the Debtors, in their business judgment, filed the 9019 Motion seeking approval of a stipulated settlement among the Parties (the "Settlement"), which will result in the release of the Zohar I Issuer Holdback to Plaintiffs and MBIA and a consensual dismissal of this Adversary Proceeding.

10.     On November 4, 2019, Patriarch filed the Motion to Intervene and, on November 13, 2019, it objected to the 9019 Motion [Adv. Docket No. 26].

11.     In the Motion to Intervene, Patriarch argues that it is entitled to intervene in this Adversary Proceeding as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rule 7024 of the Federal Rules of Bankruptcy Procedure.

## OBJECTION

### A.      The Motion to Intervene is Untimely and Should be Denied

12.     Federal Rule 24(a) provides:

> **(a) Intervention of Right**.   On *timely* motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Federal Rule 24(a) (emphasis added).   Thus, as a threshold inquiry, the Court must first determine whether the Motion to Intervene was timely filed; if not, the Court need not consider whether the specific requirements of Federal Rule 24(a)(1) or (a)(2) are met.   *See Carey v. Klutznick*, 88 F.R.D. 249, 250 (S.D.N.Y. 1980) ("Intervention, whether permissive or as of right, is governed by Fed.R.Civ.P. 24. With respect to each type of intervention, the threshold question to be determined by a trial court is whether the motion to intervene is timely.") (*citing* NAACP v. New York, 413 U.S. 345, 365, 369, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973)).

13.    As detailed in the 9019 Motion, on July 12, 2018, the Debtors filed a proposed form of cash collateral order that provided for the release of the Zohar I Issuer Holdback, with the support of MBIA and the Indenture Trustee.  Patriarch objected, contending that the relevant provision of the proposed cash collateral order sought "to give the Independent Director blanket authority to settle and satisfy prepetition claims against the Debtors" and stating that they "dispute[] the validity of Blank Rome's claim."  S*ee* Docket No. 503, at ¶ 69.  Ultimately, the Debtors agreed to remove the provision as part of a global resolution of Patriarch's objections to an otherwise fully-consensual order.  However, the Debtors remained supportive of a negotiated release of the Zohar I Issuer Holdback and continued in their efforts to resolve the matter – particularly Patriarch's objection – in an efficient and cost-effective manner.  However, those efforts proved unsuccessful.

14.    As such, when the Plaintiffs filed the Complaint on July 12, 2019, Patriarch had been on notice of the Debtors' position with respect to the Zohar I Issuer Holdback for exactly one (1) year.  Nonetheless, Patriarch waited four (4) months to seek intervention, filing its motion only *after* the Debtors filed the 9019 Motion seeking approval of a negotiated resolution of the Parties' dispute.

15.    Specifically, the timeliness inquiry under Federal Rule 24 requires a consideration of "the totality of the circumstances arising from three factors: '(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.'" *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005).  The three factors are "necessarily bound up in one another." *Id*. at 371; *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 370 (3d Cir. 1995) ("[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay

in intervention may cause to the parties already involved.") *See Also Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401, 403-04 (8th Cir. 1985) (finding motion to intervene filed twelve days after commencement of lawsuit untimely because of "the expedited nature of the proceedings, [and] substantial amount of the litigation had been completed during these twelve days").

16.     Here, all three factors strongly favor denial of the Motion to Intervene.

17.     *First*, this Adversary Proceeding is at its conclusion, as the Settlement, if approved, will provide for a complete resolution of the Parties' issues.  Thus, regardless of the exact number of months that have passed since the proceeding commenced (though it has been several), the Motion to Intervene is late under the circumstances.  And importantly, Patriarch has been fully aware of all facts relevant to the Zohar I Issuer Holdback dispute since before these Chapter 11 cases commenced, and fully aware that the Zohar I Fund's Independent Director and Chief Restructuring Officer have favored a negotiated settlement of the Zohar I Issuer Holdback dispute as the most reasonable and cost-effective path forward for over a year.  Nevertheless, Patriarch sat on its hands for four (4) months, filling its Motion to Intervene only after the Parties had negotiated a settlement and submitted it to the Court for approval.  Patriarch now seeks to undo the Parties' good faith compromise to pursue uncertain and potentially wasteful litigation that will further delay resolution of this already drawn out dispute and burden the Zohar I Fund's estate with significant legal fees.

18.     *Second*, and relatedly, the Zohar I Fund will be significantly prejudiced by the delay and cost that will result if Patriarch is permitted to intervene in this Adversary Proceeding.  As noted above, the Zohar I Fund has already incurred substantial legal expenses in connection with this dispute, including in addressing the Plaintiff's objections to the Settlement Agreement

and cash collateral order, and in attempting to negotiate a global resolution, including of Patriarch's objection to ***any*** release of the Zohar I Issuer Holdback.  If Patriarch is permitted to intervene and force this Adversary Proceeding back to square one, the Parties' negotiated bargain will be jeopardized and the Zohar I Fund's estate will be burdened with significant costs.[5]  And perhaps most importantly, any funds that may ultimately be retained or recovered by the Zohar I Fund's estate through the costly litigation Patriarch seeks to undertake – which, at most, could be the $2,420,000 comprising the Zohar I Issuer Holdback – would be payable to MBIA under the Final Cash Collateral Order and any subsequent cash collateral order relating to the Zohar I Fund.  As such, neither the Zohar I Fund's estate nor Patriarch stands to benefit from pursing costly and uncertain litigation in lieu of the Settlement.[6]

19.    *Third,* Patriarch can provide no justification for its delay in seeking leave to intervene.  As noted above, the Adversary Proceeding was commenced over four (4) months ago, and Patriarch has known for well over a year that the Debtors preferred a negotiated resolution of the issue to the uncertain and potentially wasteful litigation that Patriarch seeks to pursue.

20.    For the foregoing reasons, the Motion to Intervene is untimely and should be denied.

**B.    Patriarch Will Suffer no Prejudice if the Motion to Intervene is Denied**

21.    Further, Patriarch will suffer no prejudice if the Motion to Intervene is denied. *See Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) (Noting that courts maintain a "reluctance to dispose of a motion to intervene as of right on

---

[5] As noted herein, the risk that fees will deplete any recovery from the Zohar I Fund Issuer Holdback will fall on MBIA and the Zohar I Fund, not Patriarch.  Accordingly, Patriarch's claim that the Zohar I Fund's professionals are somehow "playing with house money," is more aptly directed at Patriarch itself.  *See* Motion to Intervene at ¶ 17.

[6] Patriarch's insistence on pursuing litigation over the limited amount in the Zohar I Issuer Holdback in lieu of a consensual, cost-effective resolution appears to be driven not by any economic considerations, but rather by animus towards Plaintiffs for their roles in litigation adverse to Ms. Tilton and Patriarch.

untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene."). For several reasons, such concerns are not relevant here.

22.     To the extent that the Plaintiffs are correct and the Zohar I Issuer Holdback is not property of the Zohar I Fund's estate, Patriarch lacks even an attenuated interest in the funds and thus could not possibly be harmed by denial of its Motion to Intervene. Assuming, however, that all or a portion of the Zohar I Issuer Holdback is property of the Zohar I Fund's estate, Patriarch still has no specific interest in the funds that is in need of protection through its intervention in this Adversary Proceeding. Rather, Patriarch merely asserts claims against the Zohar I Fund's estate as a creditor and equity holder, which are unrelated to the Zohar I Issuer Holdback and are already adequately represented by the Zohar I Fund, which has a fiduciary duty to maximize the value of its estate for the benefit of creditors and stakeholders.

23.     Patriarch's reliance on *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) ("Mountain Top") and *In re Money Ctr. of Am., Inc.*, 544 B.R. 107 (Bankr. D. Del. 2016) ("Money Center") for the proposition it has a specific protectable interest in the Zohar I Issuer Holdback in need of protection is misplaced.

24.     In *Mountain Top*, the intervenors were condominium owners claiming a right to specific insurance proceeds that had been earmarked and placed in escrow by the condominium association to cover repair costs in the aftermath of Hurricane Hugo. In determining that the intervenors had a specific, protectable interest in the funds at issue, the Third Circuit found that "[a]ccording to Virgin Islands law and the MTCA's By-laws, this money is held in trust for each of the apartment owners under the supervision of an Insurance Trustee. *Mountain Top*, 72 F.3d at 367. The Court went on to hold that: "[T]he funds deposited with the district court are assets of an express trust, of which the individual apartment owners are the intended beneficiaries. Like

all beneficiaries of an express trust, these beneficiaries have a property interest in the trust res that is enforceable either in law or in equity." *Id.* (citations omitted).

25.    Similarly, in *Money Center*, the intervenor, a casino operator, claimed that the debtor, a provider of automated teller machines and related services, held certain cash as a "mere conduit" for its benefit.  Upon a prior motion by similarly situated creditors, who had instituted an adversary proceeding seeking to recover funds they likewise asserted were not property of the debtor's estate (that which the intervenor sought to join), the court entered an omnibus order that "effectively set[] aside $900,000 of the estate's funds to provide Plaintiffs, in the event they succeed in the adversary proceeding, with the opportunity to recover moneys they claim are not property of the estate available to general creditors." *Money Ctr. of Am., Inc.*, 544 B.R., at 115.

26.    Unlike the intervenors in *Mountain Top* and *Money Center*, Patriarch has no specific interest in the Zohar I Issuer Holdback.  The Zohar I Issuer Holdback is not held in escrow for Patriarch's benefit as a legal beneficiary, as was the case in *Mountain Top*, nor has the Court ordered that the Zohar I Issuer Holdback be set aside or preserved in order to pay Patriarch's claims against the Zohar I Fund's estate (or any claims for that matter), as was the case in *Money Center*.  Rather, Patriarch's interest here, if any, is limited to its desire that the Zohar I Fund have more cash available at the end of the day to satisfy its claims, which are wholly unrelated to this Adversary Proceeding.  Such an interest is insufficient to support a right to intervention.  *See Mountain Top*, 72 F.3d, at 366 ("[T]he mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene . . . If the appellants' only interest in the present case was to ensure that the MTCA would have sufficient resources to satisfy any judgment they may be able to obtain in the

territorial court action, the district court's reasoning and conclusion [in denying appellants' motion to intervene] would be sound.").

27.     Further, and particularly in light of the foregoing, Patriarch's interests are adequately represented in this Adversary Proceeding by the Zohar I Fund, which has a duty to maximize the value of its estate for the benefit of creditors and stakeholders.  Patriarch may disagree with the Zohar I Fund's strategy in this Adversary Proceeding, but it cannot credibly argue that its and the Zohar I Fund's interests are not aligned.  To the extent it does disagree with the Zohar I Fund's business judgment, it can assert its position in an objection to the 9019 Motion, which it has done.

28.     Accordingly, the Debtors respectfully submit that the Court should deny the Motion to Intervene.  Alternatively, the Court should defer consideration of the Motion to Intervene pending its ruling on the Debtors' 9019 Motion, which, if granted, would moot the Motion to Intervene.

*[Remainder of this page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Zohar I Fund respectfully requests that the Court (i) deny the Motion

to Intervene and (ii) grant such other and further relief as the Court deems just and proper.

Dated: November 18, 2019       YOUNG CONAWAY STARGATT & TAYLOR, LLP
       Wilmington, Delaware

*/s/ Shane M. Reil*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Zohar I Fund*