IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ZOHAR III, CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered |
| BLANK ROME LLP, FFP (CAYMAN) LIMITED, MAPLES AND CALDER, MAPLESFS LIMITED, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, GARY NEEMS, and QUINN EMANUEL URQUHART & SULLIVAN LLP,<br><br>Plaintiffs,<br><br>v.<br><br>ZOHAR CDO 2003-1 CORP. and ZOHAR CDO 2003-1 LIMITED<br><br>Defendants. | Adv. Pro. No. 19-50273 (KBO)<br><br>Ref. Adv. Docket Nos. 19 & 26 |

## DECLARATION OF MICHAEL KATZENSTEIN

I, Michael Katzenstein, declare that:

1. I am a Senior Managing Director of FTI Consulting, Inc. ("FTI"), based out of FTI's office at Three Times Square, 9th Floor New York, NY, 10036. By order dated June 11, 2018, this Court authorized and approved my appointment as the Chief Restructuring Officer (the "CRO") for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or the "Zohar Funds") effective as of May 21, 2018. I am authorized to execute this declaration on

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

behalf of the Zohar Funds in support of the *Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, for an Order Approving and Authorizing the Stipulation of Settlement by and Among the Debtors, Blank Rome LLP, FFP (Cayman) Limited, Maples and Calder, MaplesFS Limited, Morris, Nichols, Arsht & Tunnel, LLP, Gary Neems, Quinn Emmanuel Urquhart & Sullivan LLP, And Cohen & Gresser LLP* [Docket No. 19] (the "Motion").[2]

2.  Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, discussions with my colleagues who are also working on this matter, my review of relevant documents, my overall professional experience, and/or my personal understanding of the Debtors' business affairs and financial condition. If called as a witness, I could and would competently testify to the matters set forth herein based on the foregoing.

3.  As discussed more fully in the Motion, in 2016, long before my involvement with the Zohar Funds, the Zohar I Holdback Amount was placed in a segregated account under the control of a third-party (the Indenture Trustee) for the purpose, as I understand it, of paying fees and expenses incurred by Zohar I Fund in connection with U.S. Bank's 2016 foreclosure of Zohar I Fund's assets. The funds representing the Zohar I Holdback Amount had not been distributed to the professional beneficiaries thereof when, in 2018, the Zohar Funds filed these bankruptcy cases.

4.  Following the Zohar Funds' bankruptcy filings, the Zohar I Holdback Amount became a source of contention in these cases. When the Debtors sought court approval of the Global Settlement Agreement that has been the focal point of these cases, Blank Rome objected asserting, among other things, a senior secured priority interest in Zohar I Holdback Amount and asserting that it constituted its cash collateral. Blank Rome's objection to the Global Settlement

---

[2] Capitalized terms not herein defined shall have the meaning ascribed to them in the Motion.

27569945.6

Agreement was ultimately resolved with a commitment from the Debtors to work with Blank Rome to resolve the Plaintiffs' claims to the Zohar I Holdback Amount.

5. Thereafter, the Debtors and their advisors spent nearly six months negotiating, and then litigating, the use of cash collateral which included a proposed release of the Zohar I Holdback Amount. During those negotiations, MBIA negotiated for the release of the Zohar I Holdback Amount as a component of its consent to the Debtors' use of its cash collateral and the Patriarch Stakeholders objected to that aspect of the proposed use of cash collateral. Moreover, Blank Rome responded to the Debtors' proposed use of cash collateral citing the Zohar I Holdback Amount. These issues were tentatively resolved and the Debtors agreed to forbear from seeking a release of the Zohar I Holdback Amount at that time, but also agreed to work with Blank Rome and the other Plaintiffs to resolve the issues relating to the Zohar I Holdback Amount. The Stipulation is in furtherance of that commitment.

6. Months of attempted negotiations proved to be unfruitful so, on July 12, 2019, the Plaintiffs filed the Complaint. The Debtors thereafter spent over three months attempting to broker a settlement of the Complaint among the Plaintiffs, the Debtors, MBIA and the Patriarch Stakeholders but were unable to find a resolution that was acceptable to all of those parties. Accordingly, having spent considerable time and expense on these matters, the Debtors entered into the Stipulation with the Plaintiffs with the consent and support of MBIA.

7. In entering into the Stipulation, it was the Debtors' judgment that (i) the time, expense and other resources already devoted to the Zohar I Holdback Amount has been substantial; (ii) the costs of litigating this matter could, coupled with resources previously incurred, very well exceed the amount that could be recovered by the Debtors; (iii) were the Debtors to recover the full amount, such amount would have merely been distributed to MBIA at the time in accordance

27569945.6

with the Final Cash Collateral Order, and MBIA supports the Stipulation; and (iv) there is downside costs to the Debtors regarding the outcome of this litigation.

8.  The result of litigating the matters resolved by the Stipulation is uncertain. I believe the potential claims raised in the Complaint are complex in nature and involve complicated issues of New York trust and/or escrow law. As detailed in the Motion, the history and procedural posture of this dispute is complicated, involving the interpretation of numerous legal documents and the overlay of at least two other legal proceedings (the New York foreclosure proceeding and the Southern District of New York involuntary bankruptcy). I believe the Stipulation provides certainty with respect to resolution of the outstanding claims and reasonably avoids the significant legal expenditures attendant to continuing to fight the Complaint. The Stipulation likewise fulfills the Debtors' commitment made long ago to work with the Plaintiffs to attempt to resolve these disputes without unnecessary litigation and expense.

9.  Based on the litigious nature of most matters in these cases and the fact that the Patriarch Stakeholders have been granted the right to intervene in the adversary proceeding, I understand that prosecution of the Complaint by the Plaintiffs would likely require extensive discovery and motion practice, and it could be many months before the case went to trial. The Debtors would be burdened with additional inconvenience, expense, and potential delays and the Debtors and their stakeholders would bear the brunt of the additional litigation. The Debtors have already expended significant resources in an attempt to resolve these claims and any further time, effort, and cost would be wasteful of the estate's limited resources.

10.  Finally, I believe this Stipulation serves the paramount interest of all the Debtors' creditors. The Stipulation is supported by MBIA, the party to whom the Zohar I Holdback Amount would otherwise go. MBIA has made it clear that it wishes for the Zohar I Holdback Amount to

27569945.6

be delivered to the Plaintiffs and has stated unequivocally that if the funds were ever to get to the estates, it would not consent to the Debtors' use of those funds as MBIA's cash collateral.

11. I believe the Stipulation and the transactions contemplated therein are a sound exercise of the Debtors' business judgment.  The Stipulation is the product of good faith, arms'-length negotiations between the Parties and their representatives and represents a comprehensive, value-maximizing resolution of the Parties' disputes.  I believe that the settlement falls well within the range of reasonable litigation outcomes and the Stipulation should be approved.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: January 25, 2021

*/s/ Michael Katzenstein*
Michael Katzenstein
Chief Restructuring Officer

27569945.6